### GRAVES *v.* GARDNER.

Opinion delivered February 10, 1919.

WITNESSES—IMPEACHMENT OF ONE'S WITNESS.—Where, in a suit for recovery of hogs, one of plaintiff's witnesses testified in effect that the hogs belonged to defendant, it was permissible for plaintiff to show that witness had made prior contradictory statements.

Appeal from Howard Circuit Court; *J. S. Lake,* Judge; affirmed.

*J. S. Butt* and *W. P. Feazel,* for appellant.

It was error to allow plaintiff to impeach his own witness. 118 Ark. 460; 102 *Id.* 590; 72 *Id.* 582; 114 *Id.* 542; 109 *Id.* 213; 112 *Id.* 477.

*D. B. Sain,* for appellee.

There was no error in allowing evidence to impeach the witness as he had made statements different from his present testimony. Kirby's Digest, § 3137; 102 Ark. 588, and cases cited by appellant. There is no error and the judgment should be affirmed, as the evidence fully sustains the judgment.

HUMPHREYS, J. This is a suit instituted by appellee against appellant before a justice of the peace in Howard County for the recovery of five shoats. After trial in the magistrate's court, the cause was appealed to the circuit court of Howard County and there submitted to a jury on the evidence adduced and instructions of the court. The jury returned a verdict for appellee and a judgment was rendered in his favor, from which an appeal has been prosecuted to this court.

It is conceded by appellant that there is sufficient evidence in the record to support the verdict and that the jury were properly instructed by the trial court, but it is insisted that the court erred in permitting appellee to introduce the evidence of Grant Chambers for the purpose of impeaching his own witness, Lex Graves, by showing that he had made different statements from the ones testified to on the trial.

Appellee testified that after he had lost the shoats he found them something like 150 or 200 yards south of appellant's home; that Lex Graves was a brother of appellant and lived in the house with her and was present with Grant Chambers and John Glover on the occasion when he found the hogs.

Lex Graves, the brother of appellant, was placed upon the witness stand by appellee, and, after giving testimony to the effect that he, Grant Chambers and John Glover were present when Mr. Gardner found the hogs, testified in response to questions, as follows:

"Q. Did he discuss these hogs with you all down there?

A. Yes sir.

Q. I will ask you whether or not you knew the hogs of your sister?

A. Yes sir, I knew them. I knew these hogs? Yes.

Q. Was anything said about who owned those shoats you saw there by Mr. Gardner in the presence of you and Grant Chambers?

A. No sir.

Q. Did you make any statement about it?

A. I was going down there in the old field to get a little pine, and when I got down there Grant Chambers hollowed and told me to come down there, fence was down. I didn't know Gardner was around. I drove up and he stopped me. He says, 'I found my hogs.' I said, 'Did you?' He says, 'You all accused Bill Bullock of marking these hogs.' I says, 'You know they are my hogs.' * * *

Q. Did you state on that occasion that you told your sister these hogs were too large for hers?

A. No sir.

Q. In the presence of Gardner here and Grant Chambers and Glover?

A. No sir.

Q. And didn't you tell him to put them up?

A. No sir."

Appellee, over the objection of appellant, then introduced Grant Chambers as a witness, who testified on this point as follows:

"Q. I will ask you if Lex Graves stated in your hearing there and in the presence of Mr. Gardner that those were not the hogs of his sister and he (Lex Graves) told them they were too big for them?

A. Yes sir."

The rule seems to be well settled that a party producing a witness, when surprised by adverse testimony prejudicial to his case, may impeach him by showing that the witness has made statements inconsistent with the statements made by him on the stand. Kirby's Digest, sec. 3137; *Williams* v. *Cantwell,* 114 Ark. 542; *Shands* v. *State,* 118 Ark. 460. It is conceded that if Lex Graves had sworn that the hogs belonged to his sister, then his

testimony would have been prejudicial or damaging to appellee's case, and, under the rule just announced, it would have been permissible for appellee to impeach him with the testimony of Grant Chambers to the effect that he had stated in the presence of Alex Gardner, John Glover and himself that the hogs did not belong to his sister and that he told them they were too big for her shoats. We think this witness, in effect, testified that the hogs in question belonged to his sister. When asked if he knew his sister's hogs, his response was, "Yes sir, I knew them. I knew these hogs? Yes." That was tantamount to saying these hogs belonged to his sister. In response to a question as to whether he made any statement as to the ownership of the hogs, he claimed that he stated to Mr. Gardner that when he, Gardner, claimed the hogs, "You know they are my hogs." It is quite clear from a reading of the whole evidence this claim of ownership on his part was a claim made in behalf of his sister and was, in effect, testifying that the hogs in question belonged to his sister. Having, in effect, testified that the hogs belonged to his sister, it was proper to show that he had made statements out of court to the effect that the hogs did not belong to his sister. We think the contradictory evidence comes clearly within the rule set out above and that it was proper to admit it.

The judgment is therefore affirmed.